**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| _____ ) | |
| Korluh Kennedy, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | 22-11152-NMG |
| The Commonwealth of ) | |
| Massachusetts et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**MEMORANDUM & ORDER**

This case arises out of an alleged warrantless search of the residence of Korluh Kennedy ("Kennedy" or "plaintiff") by Special Agent Joseph Osmanski ("Osmanski" or "defendant") and several other law enforcement officers, including members of the Massachusetts State Police and the Worcester Police Department. Plaintiff filed suit against Osmanski, several members of the Massachusetts State Police and the Commonwealth of Massachusetts ("defendants").

Pending before the Court is Special Agent Osmanski's motion to dismiss.

I.   **Background**

   A.   **Factual History**

   At approximately 6:30 a.m. on April 10, 2019, Korluh
Kennedy was roused from her sleep by loud banging on her front
door at 184 Cohasset Street, Worcester, Massachusetts.  When she
approached the door, she was confronted by a large group of
armed police officers pointing weapons at her and her tenant, a
young mother nursing an infant.  After Kennedy opened the door,
the police officers immediately rushed into her residence,
without her consent or a search warrant.  The officers told her
they were searching for her son, Augustus B. Kormah ("Kormah"),
for whom they had an arrest warrant.

   Three weeks prior to the search, Kormah was stopped by
Massachusetts State Police for a moving traffic violation in
Worcester.  Kormah consented to a search of his car during which
the state police trooper found a small red bag suggestive of
Oxycodone.  Kormah was arrested and charged with a crosswalk
violation and possession of a Class B substance (Oxycodone).  He
was scheduled for arraignment in the Worcester District Court on
March 25, 2019, but he did not appear and the court issued an
arrest warrant.  Kormah did not reside at his mother's house at
the time of the arrest, nor at the time of the search.  When the
officers burst into her residence, Kennedy immediately informed

them that Kormah did not live there and was not present with her.

Despite being so informed, defendants conducted an extensive search of Kennedy's entire residence, from garage to attic, going through bathrooms, bedrooms and the kitchen, dumping boxes and drawers.  Two police K-9 officers brought their dogs into the house to sniff it systematically and one of the dogs urinated on Kennedy's belongings.  According to the complaint and the photographs submitted as exhibits to the complaint, the officers completely "trashed" plaintiff's residence, leaving it in "disastrous condition."

After about 45 minutes, Kennedy asked the officers, none of whom had identified themselves to her, if they had a search warrant.  Defendant Thiago Miranda, a Massachusetts State Police trooper, told her they did not.  When she informed them she would call her lawyer, Miranda and the co-defendants packed up their equipment and left the scene.  She asked for their contact information but Miranda refused to reveal his name or identity and failed to mention that he worked for the Massachusetts State Police.

**B.  Procedural History**

On April 8, 2022, Kennedy filed a ten-count complaint in the Massachusetts Superior Court for Suffolk County.  She

alleged violations of 42 U.S.C. § 1983, a Bivens claim for
violation of the Fourth Amendment, trespass, invasion of
privacy, conspiracy, assault, violation of the Massachusetts
Civil Rights Act, M.G.L. c. 112 § 111M, intentional infliction
of emotional distress, violation of Massachusetts Public Records
Law, M.G.L. c. 66 § 10 and violation of the Massachusetts Torts
Claims Act, Chapter 258.

In July, 2022, Osmanski filed a notice of removal with this
Court pursuant to 28 U.S.C. § 2679(d)(1), certifying that he was
acting within the scope of his employment with the federal
government at the time of the incident out of which the
complaint arose.

The Commonwealth of Massachusetts promptly moved to sever
and remand Counts VIII and IX, the two state law claims against
it.  In October, 2022, this Court allowed the Commonwealth's
motion to sever and remand and dismissed the Commonwealth from
the present action.

With respect to the state law claims against Osmanski, the
United States ("the government") substituted itself for him and
moved to dismiss those claims in September, 2022.  The Court
allowed the government's motion to dismiss without prejudice to
permit plaintiff to exhaust her administrative remedies and then
amend her complaint.

- 4 -

On behalf of Osmanski, the government now moves to dismiss plaintiff's <u>Bivens</u> claim against him in his individual capacity. Plaintiff opposes that motion and the American Civil Liberties Union of Massachusetts has filed an amicus brief encouraging the Court to deny the motion to dismiss.  For the reasons that follow, the pending motion will be denied.

## II.  <u>Motion to Dismiss</u>

### A.   Legal Standard

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the subject pleading must state a claim for relief that is actionable as a matter of law and "plausible on its face." <u>Ashcroft</u> v. <u>Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp.</u> v. <u>Twombly</u>, 550 U.S. 544, 570 (2007)).  A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the "court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ocasio-Hernandez</u> v. <u>Fortuno-Burset</u>, 640 F.3d 1, 12 (1st Cir. 2011) (quoting <u>Iqbal</u>, 556 U.S. at 678).

When rendering that determination, a court may not look beyond the facts alleged in the complaint, documents incorporated by reference therein and facts susceptible to judicial notice. <u>Haley</u> v. <u>City of Boston</u>, 657 F.3d 39, 46 (1st Cir. 2011).  A court also may not disregard properly pled

factual allegations even if "actual proof of those facts is improbable." Ocasio-Hernandez, 640 F.3d at 12 (quoting Twombly, 550 U.S. at 556).  Rather, the necessary "inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw." Id. at 13.  The assessment is holistic:

> the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible.

Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernandez, 640 F.3d at 14).

## B.   The Bivens Doctrine

### 1.   Background

Since 1971, the "Bivens doctrine [has] allow[ed] plaintiffs to vindicate certain constitutionally protected rights through a private cause of action for damages against federal officials in their individual capacities." DeMayo v. Nugent, 517 F.3d 11, 14 (1st Cir. 2008).

In Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), the plaintiff alleged that Federal Bureau of Narcotics agents entered his New York City apartment without a warrant.  In the absence of exigent circumstances or consent, "a warrantless search of the home is

- 6 -

presumptively unconstitutional" under the Fourth Amendment. Groh
v. Ramirez, 540 U.S. 551, 564 (2004).  Thus, the federal agents
unlawfully searched the residence and subsequently arrested
plaintiff for narcotics violations in front of his wife and
children without probable cause. Bivens, 403 U.S. at 389.  The
Supreme Court held that a violation of the Fourth Amendment by a
federal agent acting under color of his authority gives rise to
a cause of action for damages, thus establishing a Bivens claim.
Id. at 397.

Throughout the following decade, the Supreme Court extended
the cause of action first articulated in Bivens to: (1) a Fifth
Amendment due process claim for sex discrimination, David v.
Passman, 442 U.S. 228 (1979), and (2) an Eighth Amendment
deliberate indifference claim for failure to provide proper
medical attention, Carlson v. Green, 446 U.S. 14 (1980).  Along
with Bivens itself, those three contexts are the sole causes of
action recognized by the Supreme Court today under Bivens.
Egbert v. Boule, 142 S. Ct. 1793, 1802 (2022).

### 2.  Two-Step Analysis

The Supreme Court uses a two-step inquiry to inform its
analysis of a Bivens claim. Id. at 1803:

   (1)  First, [the Court] ask[s] whether the case presents
        a new Bivens context, i.e., is it meaningfully
        different from the three cases in which the Court

has implied a damages action.

(2)   Second, if a claim arises in a new context, a <u>Bivens</u>
      remedy is unavailable if there are special factors
      indicating that the Judiciary is at least arguably
      less equipped than Congress to weigh the costs and
      benefits of allowing a damages action to proceed.

<u>Id.</u> (quoting <u>Ziglar</u> v. <u>Abbasi</u>, 137 S. Ct. 1843, 1858-60 (2017)
(internal quotation marks omitted)); <u>see also</u> <u>González</u> v. <u>Vélez</u>,
864 F.3d 45, 52-53 (1st Cir. 2017).  Furthermore, the Supreme
Court has held that a court may not create a new <u>Bivens</u> cause of
action if Congress or the Executive has already provided "an
alternative remedial structure." <u>Id.</u> at 1804 (quoting <u>Ziglar</u>,
137 S. Ct. at 1858).

### 3.   **Limitations on <u>Bivens</u>**

In recent years, the Supreme Court has emphasized that
recognizing an implied cause of action under <u>Bivens</u> is a
"disfavored judicial activity." <u>Ziglar</u>, 137 S. Ct. at 1857.  The
Supreme Court has stressed repeatedly that Congress, not the
judiciary, should be responsible for providing a damages remedy
in most situations.  Indeed, in the Supreme Court's most recent
pronouncement on <u>Bivens</u>, <u>Egbert</u> v. <u>Boule</u>, 142 S. Ct. 1793
(2022), the Court explains that the <u>Bivens</u> two-step inquiry
"often resolve[s] to a single question: whether there is any
reason to think that Congress might be better equipped to create
a damages remedy." 142 S. Ct. at 1803.

Although the Supreme Court in Egbert declares that if it were to decide Bivens today, it would decline to discover any implied causes of action in the Constitution, it did not overturn Bivens. Id. at 1809.  In fact, the majority opinion concludes by stating, "to decide the case before us, we need not reconsider Bivens itself." Id.

C.  **Application**

Special Agent Osmanski moves to dismiss because he argues that Egbert v. Boule sharply curtailed the precedent set by Bivens, making it nearly impossible for a plaintiff to bring a Bivens claim against a federal law enforcement officer. Defendant's memorandum of law is peppered with quotes from the Egbert majority opinion in an attempt to suggest that the Supreme Court's disinclination to expand Bivens in fact prohibits almost all Bivens remedies but defendant fails to acknowledge that Bivens and its progeny in the First Circuit remain the law today.

To determine if a Bivens action may proceed, a court must first evaluate whether the claim arises in a "new context," meaning a different setting than those present in the three cases in which the Supreme Court has implied a damages action. Egbert, 142 S. Ct. at 1803.

- 9 -

Osmanski contends that Kennedy's claim presents a new Bivens context and thus the Court must conduct a special factors analysis under step two of the inquiry.  In support of that argument, he relies on the fact that the Egbert case presented "almost parallel circumstances" yet the Supreme Court held that Egbert arose in a new Bivens context. Id. at 1805-06.  In response, Kennedy submits that Osmanski misconstrues her claim as a new Bivens context, when her case, in fact, falls squarely within the cause of action that the Supreme Court originally created in Bivens.

The Court is unconvinced by defendant's primary argument. Although the facts of Egbert were somewhat comparable to Bivens in that they involved a federal law enforcement officer assaulting a citizen on his own property, the Supreme Court held that Egbert arose in a new national security context because the incident occurred close to the Canadian border and involved a Customs and Border Patrol agent. See id. at 1800-01, 1806.

Defendant next contends that two differences between the facts of Bivens and Kennedy's claim necessitate a finding that the case at bar arises in a new context: (1) Bivens involved agents from the now-defunct Federal Bureau of Narcotics, whereas Osmanski is an FBI agent and (2) the federal agents in Bivens

were without a warrant while Osmanski possessed an arrest
warrant for Kennedy's son.

Although Osmanski is correct that an entirely "new category
of defendants" arises in a new context, he neglects to mention
that such language originated in Correctional Services Corp. v.
Malesko, 534 U.S. 61, 68 (2001), in which the Supreme Court
declined to apply Bivens to a private prison defendant because
corporations are a "new category of defendants." See Ziglar, 137
S. Ct. at 1857 (citing 534 U.S. at 68).  FBI agents are not a
"new category of defendants."  First Circuit precedent allows
Bivens claims against FBI agents for Fourth Amendment violations
based on unjustified house searches. See Pagán-González v.
Moreno, 919 F.3d 582, 600-01 (1st Cir. 2019) (holding that FBI
agents were not entitled to qualified immunity in a Bivens
action arising from a warrantless search of plaintiff's home in
violation of the Fourth Amendment).

Moreover, First Circuit precedent establishes the viability
of Bivens claims in the aftermath of an unreasonable search
during a routine law enforcement investigation. See DeMayo v.
Nugent, 517 F.3d 11, 17 (1st Cir. 2008) (finding the elements of
a cause of action under Bivens established when a Drug
Enforcement Agency ("DEA") agent and state police officers

- 11 -

unlawfully searched plaintiffs' residence during the controlled delivery of a suspicious package).

An arrest warrant does not permit federal agents to search the home of a third party, such as Kennedy, without exigent circumstances or consent. See United States v. Steagald, 451 U.S. 204, 212-16 & n.7 (1981).  Therefore, based on the facts as alleged in the complaint, the possession of an arrest warrant does not negate the unreasonable nature of the search and the Court concludes that Kennedy's claim is not a new Bivens context.

Kennedy's cause of action arises in the same context as that of Bivens itself: federal agents conducting an unreasonable search of someone's residence without a search warrant.  Thus, it does not present a new cause of action that would require this Court to proceed to step two to evaluate if there are special factors indicating that Congress would be better suited to create a damages remedy. See Egbert, 142 S. Ct. at 1803. Furthermore, because this Court is not fashioning a new Bivens context, the Court need not consider alternative remedial structures. Id. at 1804.

Egbert did not overrule Bivens nor did it overrule the First Circuit's relevant Bivens jurisprudence. See Pagán-González, 919 F.3d at 600-01; DeMayo, 517 F.3d at 17.  This

- 12 -

Court is bound to apply existing First Circuit precedent which would allow a <u>Bivens</u> cause of action under the facts of this case.  Accordingly, the Court finds that Kennedy has stated a claim for relief under <u>Bivens</u> against Special Agent Osmanski.

**ORDER**

For the forgoing reasons, the motion of Joseph Osmanski to dismiss (Docket No. 32) is **DENIED**.

**So ordered.**

<u>/s/ Nathaniel M. Gorton</u>
Nathaniel M. Gorton
United States District Judge

Dated November 30, 2022

- 13 -