UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KORLUH KENNEDY,<br><br>  Plaintiff,<br><br>  v.<br><br>SPECIAL AGENT JOSEPH F. OSMANSKI, III; SPECIAL AGENT JOHN DOE 1; TROOPER AMY WATERMAN; TROOPER SGT. DARLENE DECAIRE; TROOPER ERIC KARLON; TROOPER THIAGO MIRANDA; JOHN DOES 1-2, TASK FORCE DETECTIVES EMPLOYED BY THE WORCESTER POLICE DEPARTMENT; JOHN DOES 3-4, WORCESTER POLICE OFFICERS; JOHN DOE 5, A TASK FORCE OFFICER EMPLOYED BY THE MIDDLESEX COUNTY SHERIFF'S OFFICE; AND THE UNITED STATES OF AMERICA,<br><br>  Defendants. | Case No.  4:22-cv-11152-MRG<br><br>**MEMORANDUM AND ORDER** |

Defendants Erik Karlon, Thiago Miranda, and Darlene Decaire ("MSP Defendants") seek an order compelling the production of Criminal Offender Record Information ("CORI") from Plaintiff and her son. This motion is unopposed by Plaintiff. After careful consideration, and for the following reasons, the motion is **DENIED**.

**I.  BACKGROUND**

Plaintiff Korluh Kennedy ("Mrs. Kennedy") is a naturalized United States citizen who was born in Liberia. (Compl., 5:41, ECF No. 77.) She has five children, one of whom is Augustus B. Kormah ("Mr. Kormah"). (Compl., 5:42.) She alleges the following facts in her complaint about the warrantless search of her home in April 2019. On March 21, 2019, Mr. Kormah was arrested for a crosswalk violation and possession of a Class B substance (oxycodone) by the Massachusetts

State Police. (Compl., 5:43, 6:52.) Four days later, he failed to appear at his arraignment in Worcester District Court and the court issued a warrant for his arrest. (Compl., 6:53.)

On April 10, 2019, law enforcement agents arrived at Mrs. Kennedy's home at approximately 6:30 am and announced their presence. (Compl., 6:64. 7:66.) When Mrs. Kennedy opened the door to her home, the agents pointed their weapons at her and immediately entered without identifying themselves. (Compl., 7:68, 79.) The agents then began a search of the entire house in an effort to find Mr. Kormah. (Compl., 7:71.) Mrs. Kennedy did not consent to the entry or search of her home and advised the agents that Mr. Kormah did not live there and was not staying there. (Compl., 7:72-73.) During this search of the house, police K-9 dogs were brought into the home to aid in the search and one dog urinated inside. (Compl., 7:75-76.)

After 30 to 45 minutes, Mrs. Kennedy asked if the agents had a search warrant and was told that they did not. (Compl., 7:78, 80.) When she stated that she would call her lawyer, the agents stopped their search and left the home. (Compl., 8:81-82.)

## II.   LEGAL STANDARD

Under Fed. R. Civ. P. 26, a party is entitled to discover "any nonprivileged matter that is *relevant* to any party's claim or defense." Fed. R. Civ. P. 26(b)(1) (emphasis added). Information within this scope "need not be admissible in evidence to be discoverable." Id. But discovery is not unlimited. Fed. R. Civ. P. 26(b)(2)(C)(i), (iii). Discovery is outside the scope of Rule 26 if it is privileged, not relevant to the claim or defense of any party, or disproportional "to the needs of the case." Fed. R. Civ. P. 26(b)(1).

Prior convictions, used to attack "a witness's character for truthfulness," are admissible at trial, subject to the restrictions outlined in the Federal Rules of Evidence. Fed. R. Evid. 609. If a conviction is admissible under Rule 609, it may still be excluded under Rule 403 "if its probative value is substantially outweighed" by the danger of unfair prejudice. Fed. R. Evid. 403.

### III. DISCUSSION

The MSP Defendants argue that G. L. c. 6, § 172 authorizes the Massachusetts Department of Criminal Justice Information Services ("DCJIS") to make available the CORI and Interstate Identification Index ("III") of prospective witnesses to an attorney of record in a court proceeding when the information is to be used for "trial strategy and/or impeachment." As a point of clarification, G. L. c. 6, § 172 makes no mention regarding the dissemination of CORI or III records to attorneys for trial strategy or impeachment purposes. The statute does, however, contemplate circumstances under which an attorney may obtain a CORI, beyond what is available to the general public, by submitting a valid court order directly to DCJIS. 803 Code Mass. Regs. § 2.07(2)(b). To obtain a valid court order, a party must show how the requested records may be relevant to the party's claims or defenses. See Harden v. Bos. Sci. Corp., 2017 U.S. Dist. LEXIS 58965, at *4-5 (D. Mass. Apr. 18, 2017) (granting a request for plaintiff's CORI where defendant made a sufficient showing of potential relevance).

Here, the MSP Defendants' motion fails to explain how the requested records may be relevant to their claims or defenses, arguing only that Mrs. Kennedy's and Mr. Kormah's CORI "are relevant and discoverable because the information contained therein is highly relevant." The MSP Defendants also do not detail any efforts to obtain CORI records that are available to the general public. See 803 Code Mass. Regs. 2.05(5). And notably, no argument was made on the likelihood that Mrs. Kennedy even has a criminal history.

At bottom, this case concerns the conduct of law enforcement agents on April 10, 2019, and whether, as has been alleged in the Complaint, they violated Mrs. Kennedy's rights under the United States Constitution, the Massachusetts Declaration of Rights, Massachusetts state law, and the common law of this jurisdiction. Mrs. Kennedy's criminal history, if any, appears to have no bearing on this case. Mr. Kormah's criminal history is similarly disconnected from the claims or defenses in this case because he is a nonparty to the litigation and was not present when the

alleged warrantless search occurred.  The MSP Defendants offer no explanation for how either individual's criminal history played a role in the agents' actions on April 10, 2019.  Further, this case may never reach a trial because the Court has referred the case to alternative dispute resolution for mediation.  (ECF No. 72.)

With this potential outcome, allowing access to the requested records, without establishing the relevance of the information therein to the merits of the claims or to the case's disposition at trial, would enable any civil litigant to circumvent the ordinary protections placed on such private and sensitive information and could discourage plaintiffs from bringing lawsuits for fear of embarrassment.  And where neither side has made pretrial disclosures of anticipated trial witnesses, the records request for impeachment purposes is premature.

### IV. CONCLUSION

For the foregoing reasons, the MSP Defendants' motion is **DENIED**.

**IT IS SO ORDERED.**

Dated: June 20, 2023

/s/ Margaret R. Guzman
MARGARET R. GUZMAN
United States District Judge